UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:98-CR-00065-JAW |
| | ) | |
| ROBERT SEGER | ) | |

**ORDER ON MOTION TO CLARIFY TERMS
OF SUPERVISED RELEASE**

In 1999, the Court sentenced Robert Seger to 120 months incarceration and 36 months supervised release for the possession, receipt, distribution, and production of child pornography. *J.* (Docket # 8). On March 10, 2008, the Government filed a Certification of a Sexually Dangerous Person in the United States District Court in North Carolina pursuant to 18 U.S.C. § 4248(a). *Gov't's Resp. to Def.'s* Pro Se *Mot. to Clarify Terms of Supervised Release* (Docket # 14) (Attach. 1 Civil Docket, *United States v. Seger*, Docket No. 08-HC-02034-FL (E.D.N.C. 2008) (*Seger N.C. Docket*)) (*Gov't's Resp.*). On March 7, 2011, Mr. Seger moved *pro se* to clarify the terms of his supervised release. *Mot. to Clarify Terms of Supervised Release* (Docket # 11) (*Def.'s Mot.*). He requests an order declaring that his thirty-six month term of supervised release began to run when his term of incarceration would have ended if the Government had not filed the Certification. The Court dismisses Mr. Seger's motion without prejudice because the issue is not ripe for judicial review.

I. **BACKGROUND**

  A. **Defendant's Conviction and the Pending Civil Commitment Hearing**

On March 11, 1999, Robert Seger pleaded guilty to two counts of possession of child pornography, one count of receipt of child pornography, one count of distribution of child pornography, and three counts of production of child pornography. *Proceeding* (Docket # 6). On June 3, 1999, the Court sentenced Mr. Seger to 120 months of incarceration, 36 months supervised release, and a special assessment of $700.[1] *J.*

On March 10, 2008, ten days before Mr. Seger's scheduled release, the Government filed a Certificate of a Sexually Dangerous Person under 18 U.S.C. § 4248(a). *Seger N.C. Docket, Cert. of a Sexually Dangerous Person* (Docket # 1). The District Court issued an order staying the case pending the resolution of an appeal in a separate case.[2] *Id.* (Docket # 2). On March 7, 2011, Mr. Seger filed his *pro se* motion in this Court, *Def.'s Mot.*; on March 28, 2011, the Court appointed counsel to represent Mr. Seger; *CJA 20* (Docket # 15); and, on April 15, 2011, defense counsel adopted Mr. Seger's motion. *Minute Entry* (Docket # 17). Regarding Mr. Seger's current status, it appears that the Government correctly states that "[a]t this point,

---

[1] The Court sentenced Mr. Seger to sixty months on counts one and two, possession of child pornography, and one hundred and twenty months on counts three through seven, one count of receipt, one count of distribution, and three counts of production of child pornography. *J.* The sentences ran concurrently. *Id.*

[2] The North Carolina docket only reflects that the petition is held in abeyance "pending the appellate process in Comstock." *Seger N.C. Docket* (Docket # 1). In its response, the Government clarified that "Comstock" is *United States v. Comstock*, 507 F. Supp. 2d 522 (E.D.N.C. 2007), *aff'd*, 551 F.3d 274 (4th Cir. 2009), *rev'd*, 130 S. Ct. 1949 (2010), *on remand*, 627 F.3d 513 (4th Cir. 2010), *petition for cert. filed,* (Mar. 4, 2011)." *Gov't's Resp.* at 1.

2

the Defendant's release from imprisonment imposed in *United States v. Seger*, 98-CR-00065 (D. Me.) has been stayed, and he remains in civil commitment proceedings, but he has not yet been civilly committed." *Gov't's Resp.* at 2.

### B. Current Dispute

#### 1. Defendant's Position

Mr. Seger requests "an order recognizing that his supervised release began on the day he completed his sentence on March 20, 2008 and terminated three years later on March 21, 2011." *Def.'s Mot.* at 1. In support, Mr. Seger observes that federal statute provides that "[a] term of supervised release begins to run 'on the day the person is released from imprisonment . . . .'" *Def.'s Mot.* at 2 (quoting 18 U.S.C. § 3624). Mr. Seger argues:

> [He] was released from the term of imprisonment imposed by this Court when he completed that term on March 20, 2008. Although the expiration of his term of imprisonment did not result in him leaving custody, this circumstance was solely due to the civil detention. His supervised release must run during his civil detention unless there is authority for it to be tolled.

*Id.* Next, Mr. Seger points out that the "applicable statute contains only one circumstance where a period of supervised release may be tolled: [w]hen the defendant's term of incarceration ends, but is followed by a period 'in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime' for a period of more than 30 days." *Id.* at 2-3 (quoting 18 U.S.C. § 3624(e)). Mr. Seger notes that his "current detention is not based on '. . . a conviction for a Federal, State, or local crime,' but inste[a]d is a non-criminal detention." *Id.* at 3

3

(quoting 18 U.S.C. § 3624(e)) (citing *Kansas v. Hendricks,* 521 U.S. 346, 361 (1997)). He also says that in *United States v. Hernendez-Ferrer*, 599 F.3d 63, 67 (1st Cir. 2010), the First Circuit held that the "*only time a period of release can be tolled*, is when a defendant subject to supervised release is incarcerated for a new criminal conviction."[3] *Def.'s Mot.* at 3 (emphasis in motion). He concludes that "[b]ecause Mr. Seger is not incarcerated pursuant to a new criminal conviction, his term of supervised release cannot be tolled, and must be deemed to have begun on March 20, 2008." *Id.*

Mr. Seger cites three district court orders to support his assertion that "[a]t least three other persons who are civil detainees pursuant to 18 U.S.C. § 4248 have obtained orders from their sentencing judges recognizing that their terms of supervised release run during their civil detention."[4] *Id.* at 3-4. Mr. Seger requests a similar order "[b]ecause supervised release cannot be tolled by a civil detention, his 3 year period of supervised release must be deemed to have run." *Id.* at 4. Such an order, according to Mr. Seger, is "[n]ot only . . . legally required, but concepts of equality and fairness mandate this result." *Id.*

---

[3] In addition to *Hernandez- Ferrer*, he says the Third and Sixth Circuits have drawn the same conclusion. *Id.* at 3 (citing *United States v. Cole*, 567 F.3d 110, 114-15 (3d Cir. 2009); *United States v. Ossa-Gallegos*, 491 F.3d 537, 543 (6th Cir. 2007)).

[4] *Order Granting Mot.*, *United States v. Mays*, No. 03-cr-16-JDS (D. Mont. 2010) (Docket # 30); *Order Clarifying Supervised Release*, *United States v. Shideler*, No. 95-cr-8105-JIC (S.D. Fl. 2010) (Docket # 58); *Order Granting Mot. for Early Termination of Probation*, *United States v. Wade*, No. 06-cr-103-RCJ -GWF (D. Nev. 2009) (Docket # 24). Mr. Seger also cites a district court order concluding that an offender's period of supervise release was tolled while he remained in BOP custody pending a § 4248 civil commitment hearing. *Def.'s Mot.* at 4 (citing *Order Denying Def.'s Mot. to Declare Supervised Release Expired*, *U.S. v. Bolander*, No. 01-CR-2864-L (S.D. Cal. 2010) (Docket # 29).

## 2. The Government's Position

Disagreeing with Mr. Seger's interpretation of statutory and case law, the Government argues that "the Defendant's period of supervised release begins to run at the point that he is civilly committed under the Act, but it does not run during the period in which the civil commitment proceedings are pending." *Gov't's Resp.* at 1. The Government points to the language of § 4248(a), which provides that "[a] certificate filed under this subsection shall stay the release of the person pending completion of procedures contained in this section." *Id.* at 2 n.1 (quoting 18 U.S.C. § 4248(a). The Government says that Mr. Seger's supervised release has not commenced because he has not yet been released from his original term of incarceration. *Id.* at 2 ("During this period the Defendant remains imprisoned on the underlying charge").

In addition, the Government relies on a letter from Joe Gergits, Assistant General Counsel with the Administrative Office of the United States Courts, to support its contention that under 18 U.S.C. § 4248(d) "supervised release begins upon the Defendant's *release* from imprisonment." *Id.* at 2 (emphaisis added) (Attachment #2) (*Gergits Letter*). Because Mr. Seger has never been released, the Government concludes that his "period of supervised release has not yet begun, and it will not begin to run until the Defendant is released from imprisonment either into the community or into civil commitment." *Id.* at 3.

### a. The Gergits Letter

Assistant General Counsel Gergits' letter supports the Government's argument. Addressing the situation where—as here—"an offender is held past his prison sentence pending the resolution of his civil commitment proceeding," Mr. Gergits quotes § 4248(a), which states: "A certificate filed under this subsection shall stay the release of the person pending completion of procedures contained in this section." *Gergits Letter* at 2 (quoting 18 U.S.C. § 4248(a)). Mr. Gergits notes that section 3624(e) requires that "a term of supervised release commences on the *day the person is released* from imprisonment . . . ." *Id.* (internal quotations omitted) (quoting 18 U.S.C. § 3624(e)) (emphasis added). Taken together, Mr. Gergits interprets these provisions to mean that if a defendant was never released from BOP custody, he does not meet the § 3624 statutory requirements for triggering supervised release:

> If the government files a [§ 4248] certification on the eve of an offender's scheduled date of release from prison, a district court will be unable to complete a hearing and rule on the propriety of commitment before the offender's prison sentence is due to end. Some have surmised that under that circumstance § 3624(e) tolls supervised release. A better view is that supervised release has not yet begun because the offender has not been "*released* from imprisonment," the statutory trigger for the commencement of supervised release found in § 3624(e).

*Id.* at 2 (quoting 18 U.S.C. § 3624(e)) (emphasis in *Gergits Letter*). By contrast, Mr. Gergits opined that "§ 3624(e) does not toll supervised release when an offender is civilly committed under § 4248." *Id.*

## II. RIPENESS

Article III restricts federal courts' jurisdiction to actual controversies and prohibits mere advisory opinions. *See Verizon New England, Inc. v. International Broth. of Elec. Workers, Local No. 2322*, __ F.3d__, 9 (1st Cir. 2011); *Manguel v. Rotger-Sabat*, 317 F.3d 45, 59 (1st Cir. 2003). This jurisdictional restriction finds expression in the ripeness doctrine. *Verizon New England*, __ F.3d at 9. Ripeness determinations "mix[] various mutually reinforcing constitutional and prudential considerations." *Doe v. Bush*, 323 F.3d 133, 138 (1st Cir. 2003). These considerations include, "the need to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements," "avoid[ing] unnecessary constitutional decisions," and "the recognition that, by waiting until a case is fully developed before deciding it, courts benefit from a focus sharpened by particular facts." *Id.* (internal quotations omitted) (citations omitted). Ripeness determinations are "dependent on the circumstances of a particular case." *Id.*

The First Circuit recently offered a concise articulation of the test for determining ripeness:

> [W]here challenges are asserted to government actions and ripeness questions arise, a court must consider both fitness for review and hardship. The fitness inquiry concerns questions of finality, definiteness, and the need for further factual development. Under hardship, the court should consider whether the challenged action creates a direct and immediate dilemma for the parties. [T]hese inquiries are highly fact-dependent, such that the various integers that enter into the ripeness equation play out quite differently from case to case.

7

*Verizon New England*, __ F.3d at 9 (internal quotations omitted) (citations omitted). The "fitness" inquiry asks "whether allowing more time for development of events would 'significantly advance our ability to deal with legal issues presented [or] aid us in their resolution.'" *Doe*, 323 F.3d at 138 (quoting *Duke Power Co. v. Carolina Envtl. Study Group,* 438 U.S. 59, 82 (1978)). In answering the "hardship" question courts must "'focus on the judgment's usefulness.'" *Verizon New England*, __ F.3d at 9 (quoting *Rhode Island v. Narragansett Indian Tribe,* 19 F.3d 685, 693 (1st Cir.1999)). The First Circuit explained, "'[C]ourts will do well to ask . . . whether granting relief would serve a useful purpose, or, put another way, whether the sought-after declaration would be of practical assistance in setting the underlying controversy to rest.'" *Id.*

## III. DISCUSSION

Mr. Seger asks for a judicial determination as to when his supervised release is going to start. Answering such a question would force the Court to engage in the type of 'premature adjudication' and 'abstract disagreements' prohibited by Article III of the Constitution and First Circuit case law. *Doe*, 323 F.3d at 138 (quoting *Abbott Labs. V. Gardner*, 387 U.S. 136, 148 (1967)). Ripeness determinations require a court to engage in a dual inquiry considering both "fitness" and "hardship." *Verizon New England*, __ F.3d at 9. Application of the First Circuit's test for determining ripeness to the unique facts of this case make it clear that the Defendant requests the Court to issue an advisory opinion. This the Court cannot do.

8

### A. Fitness for Review

Under the "fitness" inquiry, a court determines "whether allowing more time for development of events would significantly advance [its] ability to deal with legal issues presented [or] aid . . . in their resolution." *Doe*, 323 F.3d at 138 (internal quotations omitted) (citations omitted). Here, what remains unresolved is whether Mr. Seger will be civilly committed and, if so, for how long. Whether a judicial determination of the starting date of his supervised release affects Mr. Seger's legal rights depends upon how those questions are answered.

To explain, the Government concedes that Mr. Seger's term of supervised release will begin to run if he is civilly committed. *Gov't's Resp.* at 3 (stating that Mr. Seger's supervised release "will not begin to run until the Defendant is released from imprisonment . . . into civil commitment"), and as Mr. Seger concedes, if he is civilly committed, he could be detained for the rest of his life. *Def.'s Mot.* at 1 ("Under the current state of the law, the government has the authority to indefinite[e]ly detain Mr. Seger pursuant to [§] 4248"). If Mr. Seger is civilly committed and if he remains in civil custody for thirty-six months or more, then his period of supervised release will have run and there will be no need to determine whether it was running while the § 4248 hearing was pending. The legal question that Mr. Seger has raised is significant only if he is not civilly committed or if he is civilly committed for less than thirty-six months.

Because the requested relief will be effective only if one among a number of future events occurs and will be ineffective otherwise, Mr. Seger's question is

hypothetical and not now fit for judicial review. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937) ("It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts"); *Cordi-Allen v. Conlon*, 494 F.3d 245, 253 n.6 (1st Cir. 2007); *Rhode Island,*, 19 F.3d at 705 (noting that federal courts do not deal in hypothetical questions).

**B.    Hardship**

The "hardship" inquiry requires courts to be concerned about "the hardship to the parties that would result from a refusal to consider granting relief." *Rhode Island*, 19 F.3d at 693. To this end, the First Circuit has directed the district court to ask "whether granting relief would serve a useful purpose [or] whether the sought-after declaration would be of practical assistance in setting the underlying controversy to rest." *Verizon New England*, __ F.3d at 9 (quoting Rhode Island, 19 F.3d at 9.). Under this second prong of the ripeness test, courts should consider "whether the challenged action creates a direct and immediate dilemma for the parties." *Id.* (internal quotations omitted) (citations omitted).

Here, no matter the Court's ruling, Mr. Seger will remain in custody pending his § 4248 hearing and, therefore, the Court's order would have no immediate effect on Mr. Seger. If the hearing results in his civil commitment for more than three years, the order would serve no purpose other to advise him what would have happened in a situation that never occurred. Thus, while the § 4248 hearing is pending, there is no "direct and immediate dilemma for the parties." *Id.* Mr. Seger

10

has identified no hardship that will occur if his requested relief is not immediately granted and if he is civilly committed for three or more years, there will be none. By contrast, if Mr. Seger is not civilly committed or if he is civilly committed for less than three years, he is free to return to federal court with a request for relief that will be constitutionally cognizable.

## IV. CONCLUSION

The Court DISMISSES without prejudice Robert Seger's Motion to Clarify Terms of Supervised Release (Docket # 11).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 8th day of August, 2011