UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:98-cr-00065-JAW |
| | ) | |
| ROBERT SEGER | ) | |

## ORDER CLARIFYING SUPERVISED RELEASE

In 1999, the Court sentenced Robert Seger to 120 months incarceration and thirty-six months supervised release for the possession, receipt, distribution, and production of child pornography. Mr. Seger's term of incarceration was due to end on March 20, 2008. However, the Government moved to civilly commit Mr. Seger as a "sexually dangerous person" under the Adam Walsh Child Protection and Safety Act, 18 U.S.C. § 4248(a) (2006) (Adam Walsh Act). During the civil commitment proceeding, Mr. Seger remained incarcerated. After a federal district court denied the Government's motion to civilly commit Mr. Seger, he was released from incarceration on February 6, 2013. Mr. Seger now moves the Court to clarify whether his term of supervised release began to run on March 20, 2008, when he was originally scheduled to be released from prison, or on February 6, 2013, when he was actually released. The Court clarifies that Mr. Seger's period of supervised release began to run on February 6, 2013, and will terminate on February 6, 2016.

## I. FACTS

Mr. Seger and the Government do not dispute the historical facts of this case. The Court sentenced Mr. Seger in 1999 to 120 months incarceration and thirty-six months supervised release.[1]  *J.* (ECF No. 8); *see Renewed Mot. to Clarify Terms of Supervised Release* at 1 (ECF No. 19) (Feb. 7, 2013) (*Def.'s Mot.*); *Gov't's Resp. to Def.'s Renewed Pro Se Mot. to Clarify Terms of Supervised Release* at 1 (ECF No. 21) (Feb. 22, 2013) (*Gov't's Original Resp.*).   On March 10, 2008, ten days before the conclusion of his sentence, the U.S. Attorney's Office in Raleigh, North Carolina moved to have Mr. Seger civilly committed as a sexually dangerous person, pursuant to the provisions of the Adam Walsh Act.  *Def.'s Mot.* at 1; *Gov't's Original Resp.* at 1.  The Bureau of Prisons (BOP) retained physical custody of Mr. Seger pending the outcome of the civil commitment proceeding.  *Def.'s Mot.* at 1; *Gov't's Original Resp.* at 2.

On March 11, 2008, the United States District Court for the Eastern District of North Carolina held Mr. Seger's civil commitment case in abeyance pending the resolution of *United States v. Comstock*, 507 F. Supp. 2d 522 (E.D.N.C. 2007), *aff'd*, 551 F.3d 274 (4th Cir. 2009), *rev'd*, 560 U.S. 126 (2010), *on remand*, 627 F.3d 513 (4th Cir. 2010), *cert. denied*, 131 S. Ct. 3026 (2011) (mem.).  *Order Staying Case* (ECF No. 2), *United States v. Seger*, No. 5:08-hc-02304-MU (E.D.N.C. Mar. 11, 2008).  The district court lifted this stay on June 11, 2010.  *Order* (ECF No. 7),

---

[1]      Mr. Seger pleaded guilty and was sentenced to seven counts of sexual exploitation of minors; he was sentenced to 60 months on two counts of possession of child pornography and 120 months on the remaining counts of receipt and distribution of child pornography to be served concurrently.  *J.* The Court also imposed a special assessment of $700 not at issue here.  *Id.*

*United States v. Seger,* No. 5:08-hc-02304-MU. On January 23, 2013, following motion practice and a trial, the district court determined that Mr. Seger was not a sexually dangerous person and ordered his release from the custody of the BOP. *Order* (ECF No. 101), *United States v. Seger,* No. 5:08-hc-02304-MU. This chronology shows that in total, Mr. Seger spent nearly five years of additional time in the custody of the BOP after his scheduled release date. During this time, Mr. Seger was classified as a civil detainee but was housed at the same Federal Correctional Institution where he served his incarceration. *Def.'s Mot.* at 2; *see Gov't's Resp.* at 2 (declining to dispute this fact).

On March 7, 2011, shortly before his confinement was due to end, Mr. Seger moved this Court to clarify the terms of his supervised release, raising essentially the same issue he now raises. *Pro Se Mot. for Order to Clarify Terms of Supervised Release* (ECF No. 11). The Court dismissed that motion without prejudice because the legal issue was not ripe for judicial review. *Order on Mot. to Clarify Terms of Supervised Release* (ECF No. 18). Mr. Seger, acting pro se, renewed his motion to clarify on February 7, 2013. *Def.'s Mot.* The Government responded on February 22, 2013. *Gov't's Original Resp.*

On December 2, 2013, the Court appointed counsel for Mr. Seger, *Notice* (ECF No. 24), and on December 19, 2013, Mr. Seger through his attorney filed a memorandum in support of his motion to clarify. *Def.'s Mem. in Support of Renewed Mot. to Clarify Terms of Supervised Release and/or Acknowledgment of Its Completion* (ECF No. 25) (*Def.'s Mem.*). The Government responded on January 21,

2014, incorporating its prior response and responding to arguments in Mr. Seger's subsequent memorandum. *Gov't's Resp. to Def.'s Renewed Pro Se Mot. to Clarify Terms of Supervised Release* at 3 (*Gov't's Resp.*) (ECF No. 29).

## II.   THE POSITIONS OF THE PARTIES

### A.      Robert Seger's Motion

Mr. Seger begins with his primary argument—the proposition that a term of supervised release begins to run "on the day the person is released from imprisonment." *Def.'s Mot.* at 3 (quoting 18 U.S.C. § 3624(e)). He further notes that "the only time a period of supervised release can be tolled is when a defendant subject to supervised release is incarcerated for a new criminal conviction." *Id.* (citing *United States v. Hernandez-Ferrer*, 599 F.3d 63, 67 (1st Cir. 2010)). Because his civil confinement was not an incarceration pursuant to a new criminal conviction, Mr. Seger concludes that there were no legitimate grounds for tolling the period of his supervised release. *Id.* He further concludes that his term of supervised release "must be deemed to have begun on March 20, 2008, concluding 36 months later on March 20, 2011." *Id.*

Mr. Seger cites three cases from federal district courts reaching the same conclusion, and two recent cases from the Court of Appeals for the Ninth Circuit. *Id.* (citing *United States v. Turner*, 689 F.3d 1117 (9th Cir. 2012); *United States v. Bolander*, 487 F. App'x 349 (9th Cir. 2012); *United States v. Wade*, No. 06-cr-103-RCJ-GWF (D. Nev. 2009); *United States v. Shideler*, No. 95-cr-8105-JIC (S.D. Fla. 2010); and *United States v. Mays*, No. 03-cr-16-JDS (D. Mont. 2010)).

Mr. Seger also asserts that he will suffer a hardship if the Court again declines to rule on this matter because of the restrictive conditions of his supervised release. *Id.* at 4.

### B. Mr. Seger's Memorandum

In Mr. Seger's supporting memorandum, he first notes that, unlike his first petition for the same relief filed in 2011, the pending petition presents a ripe controversy and therefore the Court retains jurisdiction to determine the instant petition. *Def.'s Mem* at 1-3. Next, Mr. Seger offers several arguments in support of his position that his term of supervised release began to run upon the conclusion of his term of criminal imprisonment in 2008. Noting that beginning in 2008, his confinement became clearly civil in nature, Mr. Segar argues "[t]o conflate civil detention with criminal imprisonment would render proceedings pursuant to [the Adam Walsh Act] unconstitutional under the Due Process, separation of powers, ex Post Facto, and perhaps other constitutional clauses." *Id.* at 4-5. He reiterates his prior argument that the tolling provision of 18 U.S.C. § 3624(e) only allows for tolling of the supervised release period with respect to a person who is "imprisoned in connection with a conviction." *Id.* at 5. On this basis, Mr. Seger submits that because the detention at issue resulted from a civil proceeding, his term of supervised release was never tolled and instead started upon the expiration of his criminal sentence on March 20, 2008. *Id.* at 5-6.

Mr. Seger then argues that the Ninth Circuit's favorable interpretation of § 3624 in *Turner* is more consistent with First Circuit caselaw than the Eighth Circuit's contrary conclusion in *United States v. Mosby*, 719 F.3d 925 (8th Cir.

2013).[2]  *Id.* at 6-11.  He explains that *Turner*, which stated that a § 4248 civil commitment proceeding is not "imprisonment that would toll a term of supervised release," 689 F.3d at 1121, "dove-tails" with *Hernandez-Ferrer*; there, the First Circuit determined that "the fact that Congress provided for a tolling period of supervised release only when an offender is imprisoned for a different crime is a decisive argument for the proposition that Congress did not intend to toll a period of supervised release for any other reason (including an offender's fugitive status)." *Id.* at 8-9 (quoting *Hernandez-Ferrer*, 599 F.3d at 68).  By contrast, the Eighth Circuit never reached the tolling issue and instead found that the term of supervised release had not commenced upon conclusion of the defendant's prison term because the defendant had not been released from custody until after his § 4248 petition had been denied.  *Id.* at 9-10 (citing *Mosby*, 719 F.3d at 928).  Mr. Seger argues that *Mosby* has "fleeting appeal" because the Eighth Circuit erroneously relied on a Supreme Court case, *United States v. Johnson*, 529 U.S. 53 (2000), in which the analysis of § 3624(e) focused on time served "by dint of a criminal conviction" and not, as here, as a result of a civil proceeding.

Finally, Mr. Seger acknowledges that a primary purpose of supervised release, as stated in *Johnson*, is to provide supervision, but argues *Hernandez-Ferrer* and other cases demonstrate that this purpose "cannot override the explicit limitation of the tolling provision recognized in *Hernandez-Ferrer* . . . ." *Id.* at 11. He asserts that the caselaw focuses on "whether the detention was in relation to a

---

[2]      Mr. Seger notes that "counsel is aware of only two federal circuit court cases that specifically address the issue presented by Mr. Seger's Pro Se Petition."  *Def.'s Mem.* at 7.  The Court agrees.

criminal conviction," and not on "whether the person was supervised or not." *Id.* at 12.

### C. The Government's Response

The Government opposes Mr. Seger's interpretation of 18 U.S.C. § 3624(e). It draws a distinction between tolling and the commencement of supervised release. *Gov't's Resp.* at 3-4. It notes that civil commitment proceedings under the Adam Walsh Act stay a defendant's release from imprisonment, so that the period of supervised release does not commence until after the civil commitment proceedings are complete. *Id.* The Government states that the majority of courts has reached the same conclusion and cites *Mosby* as well as numerous district court opinions in accord with its interpretation, namely that the term of supervised release commences when a defendant is "freed from confinement" and therefore is not tolled while the defendant is incarcerated awaiting the outcome of a civil proceeding. *Id.* at 3 (quoting *Mosby*, 719 F.3d at 930).

The Government disagrees with Mr. Seger's characterization of First Circuit precedent. *Id.* at 4. It argues that *Hernandez-Ferrer* is "purely a tolling case," where the defendant was already on supervision and therefore, unlike here, "the court was not tasked with determining whether supervised release had commenced." *Id.* It asserts that the majority opinion in *Turner*, relied upon by Mr. Seger for the proposition that a term of supervised release is not tolled while a detainee remains in custody awaiting a commitment hearing, ignored Supreme Court precedent and improperly construed § 3624(e). *Id.* at 4 (citing *Turner*, 689 F.3d at 1126 (Smith, J., dissenting)). Instead, the Government insists that *Mosby*

and other opinions reaching the same conclusion are the proper derivation of the Supreme Court decision in *Johnson*, 529 U.S. at 57, where it claims "release from imprisonment" under 18 U.S.C. § 3524(e) was interpreted to mean "the defendant's actual, physical release from custody." *Gov't's Original Resp.* at 3-4. Finally, the Government notes that this exact issue is pending before the Fourth Circuit, attaches the government's appellate brief, and adopts the position taken by the government there, the same position put forth by the Government in this matter. *Gov't's Resp.* at 4 and Attachs 1-5 *Br. of Appellee United States of America* (ECF No. 29).

The Government concludes that Mr. Seger's release from custody was stayed during the civil commitment proceedings, and that his period of supervised release began on February 6, 2013. *Id.* at 1-4.

## III. DISCUSSION

### A. A Matter of Statutory Construction

The date on which Mr. Seger's period of supervised release began to run turns on the "interplay among three different statutory schemes: 18 U.S.C. § 4248 (the stay-of-release provision of the Adam Walsh Act); 18 U.S.C. § 3624(a) (the definition of term of imprisonment); and 18 U.S.C. § 3624(e) (the supervised release statute)." *Turner*, 689 F.3d at 1118.

Subsection (a) of 18 U.S.C. § 3624 states that "[a] prisoner shall be released by the [BOP] on the date of the expiration of the prisoner's term of imprisonment." Subsection (e) provides that "[a] prisoner whose sentence includes a term of

supervised release after imprisonment shall be released by the [BOP] to the supervision of a probation officer." *Id.* at § 3624(e). It further provides:

> The term of supervised release commences on the day the person is released from imprisonment and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release. A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days.

*Id.* at § 3624(e).

Subsection (a) of the Adam Walsh Act states that "[i]n relation to a person who is in the custody of the [BOP]," a designee of the Attorney General may "certify that the person is a sexually dangerous person," which initiates civil commitment proceedings. § 4248(a). Such a certificate "shall stay the release of the person pending completion of the procedures" for civil commitment. *Id.*

## B. A Split in the Circuits

### 1. The Ninth Circuit: *United States v. Turner*

The Ninth Circuit in *Turner* closely analyzed these passages and concluded that the "stay of release" provision under the Adam Walsh Act does not delay the commencement of supervised release. *Turner*, 689 F.3d at 1121-26. The Ninth Circuit three-judge panel split two to one. *Id.* The *Turner* majority focused first on the exact language of § 3624(a), which controls the release date for a federal prisoner: "[a] prisoner shall be released by the [BOP] on the date of the expiration of the prisoner's term of imprisonment . . . ." *Turner*, 689 F.3d at 1120 (quoting 18 U.S.C. § 3624(a)). Drawing support from the Supreme Court case of *Barber v.*

*Thomas*, 560 U.S. 474, __, 130 S. Ct. 2499, 2506 (2010), the Ninth Circuit concluded that "'term of imprisonment' refers to the sentence imposed by the sentencing judge." *Id.*

Turning to § 3624(e), the *Turner* Court concluded that the words "'imprisonment' [and] 'imprisoned' . . . describe the type of confinement that controls commencement and tolling of supervised release time." *Id.* at 1123 (quoting *United States v. Sullivan*, 504 F.3d 969, 971 (9th Cir. 2007)). Because the confinement under § 4248 is civil in nature, *id.* (citing *Comstock*, 560 U.S. at 129), it cannot serve as "imprisonment" for the purpose of § 3624(e). *Id.* The *Turner* Court concluded that the period of supervised release began to run when the prisoner was "released" from prison, notwithstanding that he was promptly civilly confined pursuant to § 4248.

The Ninth Circuit considered and rejected the Government's argument that *Johnson* required the opposite conclusion. *Id.* at 1123-24. In *Johnson*, the Supreme Court was faced with a prisoner who was convicted and sentenced on five counts; he was to serve concurrent 51-month sentences on three of the counts, followed by consecutive 60-month sentences on the remaining two counts. 529 U.S. at 1116. However, the convictions giving rise to the consecutive sentences were later vacated on constitutional grounds. *Id.* The prisoner, who had by then served more than 51 months in prison, argued that his period of supervised release began to run when the sentences for the upheld counts expired—after 51 months. *Id.* at 1116-17. The Supreme Court, considering the statutory language and the policy underlying

supervised release, *id.* at 1117-19, held that supervised release began when the prisoner was actually released from the custody of the BOP, notwithstanding that his incarceration beyond 51 months was "due to a mistaken interpretation of federal law." *Id.* at 1117. In its analysis, the *Johnson* Court focused heavily on the language directing that supervised release commences when the individual is released from "imprisonment"; it held, in essence, that even if a portion of the imprisonment was later ruled to be unsupported by law, the defendant was not "released from imprisonment" until he actually walked free. [3] *Id.*

The *Turner* Court distinguished *Johnson* on the ground that it "does not address the situation in which a person who has completed a prison sentence is then placed in *civil* detention, even if the civil detention happens to be overseen by the [BOP]." *Turner*, 689 F.3d at 1124 (emphasis in original). The Ninth Circuit also suggested that construing § 4248 to prevent supervised release from commencing during civil commitment would probably render the statute unconstitutional under the Ex Post Facto Clause of the United States Constitution. *Id.* at 1125 (citing *Stogner v. California*, 539 U.S. 607, 612 (2003)). This would be so

---

[3]     The First Circuit anticipated and agreed with the *Johnson* result as well, in a case involving virtually identical facts:

> [Section] 3624(e) ties the beginning of a term of supervised release to release from imprisonment. It forbids the running of the term of supervised release during any period in which the person is imprisoned. [The petitioner] was in prison at the time he now seeks to identify as the beginning of his terms of supervised release and was, under the plain language of § 3624(e), ineligible for supervised release then.

*United States v. Joseph*, 109 F.3d 34, 37 (1st Cir. 1998).

because it would, effectively, extend the period of punishment beyond the length sentenced, without any judicial process. *Id.*

Finally, the *Turner* majority applied the rule of lenity. *Id.* at 1126. Viewing the "intertwining of the [Adam Walsh] Act with the criminal provisions at issue" as creating a "grievous ambiguity or uncertainty in the statute," the Ninth Circuit stated that when Congress enacted the Adam Walsh Act, it "apparently did not affirmatively consider the effect of § 3624(e)." The Court concluded that "to the extent Congress intended to treat the limbo period between expiration of a sentence and imposition of a civil commitment as a 'sexually dangerous person' as tolling supervised release, the fix is a legislative one." *Id.*

### 2.   Judge Smith's Dissent

Circuit Judge Milan Smith dissented. *Id.* at 1126-32 (Smith, J., dissenting). Judge Smith viewed the majority opinion as defying "both common sense and the reasoning of binding precedent." *Id.* at 1126. Judge Smith viewed the issue as not whether supervised release was tolled but whether it began in the first place. *Id.* He concluded that "supervised release cannot begin until one is physically released from prison" and wrote that "[w]hat never begins cannot end." *Id.* at 1126-27. He rejected what he believed was the majority's misreading of *Johnson*, emphasizing that *Johnson* held that "a term of supervised release may not begin while a person physically remains in prison." *Id.* at 1127.

Judge Smith protested the majority's resort to the rule of lenity, contending that the rule of lenity does not apply wherever there is statutory ambiguity, only

when that ambiguity is so profound that a court must simply "guess as to what Congress intended." *Id.* at 1131 (quoting *Barber*, 130 S. Ct. at 2508-09).

Finally, Judge Smith described as "troubling" the "policy consequences of the majority opinion," noting that it "defeats the purpose of supervised release." *Id.* Given the purpose of supervised release to help a defendant transition from prison to a "productive life outside of prison," Judge Smith opined that the "result does him no favors." *Id.*

### 3. The Eighth Circuit: *United States v. Mosby*

On June 28, 2013 (after the parties' original briefing on this matter), the Eighth Circuit handed down an opinion squarely disagreeing with *Turner*. *Mosby*, 719 F.3d at 930 (8th Cir. 2013). The Eighth Circuit interpreted *Johnson* more expansively than the Ninth Circuit, holding that supervised release commences "on the day [the prisoner is] released from imprisonment," *id.* at 929 (quoting § 3624(e)), "or as the Supreme Court made clear in *Johnson*, the day that he was 'freed from confinement.'" *Id.* (quoting *Johnson*, 529 U.S. at 57). In the Eighth Circuit's view, the civil nature of the detention is not dispositive; the Court framed the issue as "whether an individual who has been civilly detained under § 4248 immediately following a prison term has *commenced* his supervised release." *Id.* at 930 (emphasis in original).

The Eighth Circuit also considered the policy underlying the supervised release statute: to "assist individuals in their transition to community life." *Id.* at 929 (quoting *Johnson*, 529 U.S. at 59). The *Mosby* Court reasoned that starting a term of supervised release while the prisoner was still "physically confined by

federal authorities would frustrate one of its key purposes which is to help individuals as they transition into the community." *Id.*

### C. Analysis

The critical provision of 18 U.S.C. § 3624(e) reads:

> A prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the [BOP] to the supervision of a probation officer who shall, during the term imposed, supervise the person released to the degree warranted by the conditions specified by the sentencing court. The term of supervised release commences on the day the person is released from imprisonment.

"'Supervised release' is a punishment in addition to incarceration, served after completion of a prison term," *United States v. Martin*, 363 F.3d 25, 35 n.17 (1st Cir. 2004), although its principle purpose is to rehabilitate. *United States v. Joseph*, 109 F.3d 34, 38-39 (1st Cir. 1997). Section 3624(e) contemplates that there will be a seamless transition from prison to supervised release, equating the commencement of the term of supervised release with the "day the person is released from imprisonment" and further assuming that on that day, the person will be "released by the [BOP] to the supervision of a probation officer." *Id.* However, "[t]he mechanics of determining a release date are more complicated than might be supposed." *United States v. Wetmore*, 700 F.3d 570, 574 (1st Cir. 2012). Here, the question is how the statute is to be interpreted when there is a substantial civil confinement between the release from the imprisonment ordered by the sentencing judge and the commencement of the term of supervised release, a time aptly described by the *Turner* majority as a "limbo period." *Turner*, 689 F.3d at 1126.

To answer this difficult question, the Court draws first on Supreme Court authority. As the Eighth Circuit observed in *Mosby*, the Supreme Court in *Johnson* provided guidance on the proper interpretation of § 3624(e) when it ruled that the phrase "released from imprisonment" under the commencement provision of § 3624(e) does not occur until the person is "freed from confinement." *Mosby*, 719 F.3d at 929 (quoting *Johnson*, 529 U.S. at 57). Mr. Seger was not "freed from confinement" until February 6, 2013, the day he was released from civil confinement.

Next, under the Adam Walsh Act, when the Attorney General's designee initiates civil commitment proceedings by certifying that the prisoner is a sexually dangerous person, that certificate "stay[s] the release of the person." § 4248(a). This language, on its own, weighs strongly in favor of the *Mosby*, not the *Turner* interpretation; if the release is stayed, the term of "imprisonment" does not end and the supervised release period does not commence.

Moreover, as the Ninth Circuit later conceded, even if release from BOP imprisonment to civil custody were considered the triggering date under § 3624(e), the statute contains two distinct requirements: release from imprisonment and placement in the supervision of the probation officer. Thus, under § 3624(e), "a person is not 'released' from imprisonment merely because he is physically allowed to leave the prison. Rather, the person must be legally 'released by the [BOP] to the supervision of a probation officer." *United States v. Earl*, 729 F.3d 1064, 1068 (9th Cir. 2013). Even if he was released from BOP imprisonment on March 20, 2008,

Mr. Seger was not released "to the supervision of a probation officer" until February 6, 2013. In the words of the Supreme Court, "[i]t is true that the prison term and the release term are related, for the latter cannot begin until the former expires. Though interrelated, the terms are not interchangeable . . . Supervised release has no statutory function until confinement ends." *Johnson*, 529 U.S. at 58-59.

> The *Johnson* Court's observation leads to the next point:
>
> The objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release. Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration.

*Id.* at 59. To release Mr. Seger to the community without the benefit of supervised release "does him no favors." *Turner*, 689 F.3d at 1131 (Smith, J., dissenting); *see also Joseph*, 109 F.3d at 39 ("Incarceration . . . does nothing to assist a defendant's transition back into society and is not a reasonable substitute for a portion of the supervised release term"). This is particularly true when a sex offender treatment program is one of the conditions of supervised release; such "treatment programs . . . may 'enable sex offenders to manage their impulses and in this way reduce recidivism.'" *United States v. York*, 357 F.3d 14, 12 (1st Cir. 2004) (quoting *McKune v. Lile*, 536 U.S. 24, 33 (2002)).[4]

Permitting civil confinement to substitute for supervised release also does no favors to the minors in the community who were or might be the victims of a sex

---

[4]    Participation in such a program is one condition of Mr. Seger's supervised release. *Request for Modifying the Conditions or Term of Supervision With the Consent of the Offender* (ECF No. 22) (May 28, 2013); *Order* (ECF No. 23) (May 29, 2013) (granting the requested modification).

offender's sexual exploitation. Congress enacted the Adam Walsh Act to address those individuals who "would have serious difficulty in refraining from sexually violent conduct or child molestation if released." *United States v. Comstock*, 560 U.S. 126, 130 (2010) (quoting 18 U.S.C. § 4247(a)(6)). It is true that the Government did not prove its civil commitment petition against Mr. Seger. But the urgent need to protect those who cannot protect themselves from the risk posed by the unconstrained release of a person previously convicted of sexual exploitation of a minor is consistent with the congressional policy of the Adam Walsh Act.[5]

Finally, since the Court has found that "the question is whether an individual who has been civilly detained under § 4248 . . . has *commenced* his supervised release," *Mosby*, 719 F.3d at 930 (quoting *Turner*, 689 F.3d at 1126 (Smith, J., dissenting) (emphasis in original)), it also agrees with the Government that *Hernandez-Ferrer* does not provide guidance in the instant matter. There, the First Circuit did not examine when the period of supervised release begins, but focused solely on tolling. *Hernandez-Ferrer*, 559 F.3d at 67-69. Before the *Hernandez-Ferrer* Court was a defendant who had "absconded from supervision" three-quarters through his three-year period of supervised release. *Id.* at 64, 67. The First Circuit

---

[5]     It is no answer to minor victims to say, as the majority did in *Turner*, that "the government had every opportunity to ensure Turner received treatment and rehabilitative services during the four and a half years it delayed in providing him with a civil commitment hearing." *Turner*, 689 F.3d at 1124 n.3. The record is silent as to whether Mr. Seger received such services while he awaited resolution of the civil commitment proceedings. Nevertheless, there were presumably few, if any, opportunities to sexually exploit children while Mr. Seger was incarcerated at the Federal Correctional Institute in Butner, North Carolina. The danger for children occurs when a sex offender is released from incarceration and it is then that he requires the close supervision of a probation officer. The Court does not suggest that Mr. Seger—as opposed to other sex offenders—is in particular need of supervision. The point is that the need to supervise the release from incarceration of persons convicted of sex offenses against minors is particularly acute.

addressed the concern that a defendant could, by fleeing, run out the clock on the potential criminal penalties associated with a violation of supervised release. *See id.* at 69 ("If an offender absconds before the expiration of his supervised release term, he will not do so with impunity. . . . [A] judicially contrived tolling mechanism is not necessary to deter offenders from absconding"). Here, by contrast, the issue is whether the supervised release clock started in the first place. *Mosby*, 719 F.3d at 930.

This is not an easy issue. This issue affects defendants other than Mr. Seger, presents intricate problems of statutory construction, and raises serious policy considerations that make it proper for resolution by the Court of Appeals for the First Circuit, not this Court. The Court is sensitive to the ex post facto issue raised in *Turner*. If the U.S. Attorney's Office can extend a period of confinement simply by filing a certificate, the prisoner is subject to additional punishment without judicial process, or even an administrative hearing.[6] Yet, if the confinement is civil in nature, as suggested in *Johnson*, the character of the prisoner's confinement has fundamentally changed, notwithstanding that he may continue to be housed at the same Federal Correctional Institute—as was Mr. Seger. Legally, there is a significant distinction between criminal imprisonment and civil confinement. *See*

---

[6] This is true even if, as in Mr. Seger's case, the reviewing court concludes that the government has failed to demonstrate that a defendant is a sexually dangerous person. No court is capable of restoring to the vindicated person the time lost while waiting for vindication and, unlike criminal proceedings where a defendant is incarcerated pretrial and subsequently vindicated, the civil confinement process does not contain an analogue to 18 U.S.C. §§ 3141-42. To the contrary, one of the main points of 18 U.S.C. § 4248 is to confine the person that the Attorney General or Director of the Bureau of Prisons certifies is sexually dangerous "pending completion of procedures contained in this section." 18 U.S.C. § 4248(a).

*Kansas v. Hendricks*, 521 U.S. 346, 368-69 (1997). In a sense, the prisoner has been "released" from criminal imprisonment because the term of his punitive confinement has ended; to hold that a civil confinement under § 4248 serves to extend the punitive confinement would, as the *Turner* Court noted, raise very serious constitutional problems. Moreover, Mr. Seger's position is buttressed by the considered judgment of the Court of Appeals for the Ninth Circuit in *Turner*. Finally, the Court also recognizes that despite the legal distinction between civil and criminal commitments, the practical distinction may be lost on someone like Mr. Seger who was civilly confined in the same FCI where he served his period of criminal incarceration.[7]

Despite these concerns, the Court concludes that a term of supervised release commences after, not during, any period of civil confinement authorized under § 4248(a).

## IV. CONCLUSION

The Court GRANTS Mr. Seger's Motion to Clarify and has clarified the terms of supervised release through this Order. The Court DENIES Mr. Seger's request to judicially declare that he has completed the term of supervised release in this case. The period of supervised release began on February 6, 2013, the day he was

---

[7]     The record is silent as to whether Mr. Seger's conditions of confinement changed when he crossed the line between criminal and civil commitment. *See Kansas*, 521 U.S. at 368-69 (noting that civilly-committed individuals were segregated from the general prison population, received recommended treatment, and were the beneficiaries of procedural safeguards). Mr. Seger suggests that the conditions of his confinement may have changed, but gives no specifics as to what services he received and what limitations were placed upon him. *Def.'s Mot.* at 2 ("Although he was housed in what is called the Commitment and Treatment Program facility and was a civil detainee, in actuality he was in an extremely punitive environment subject to *more* restrictions than those who are serving criminal sentences suffer from") (emphasis in original).

released from the custody of the Bureau of Prisons following his civil commitment trial.

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 29th day of January, 2014