UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:98-cr-00065-JAW |
| | ) | |
| ROBERT SEGER | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE**

With extreme hesitation, the Court grants the Defendant's motion for early termination of supervised release.

## I. BACKGROUND

### A. The Crime

On December 8, 1998, a federal grand jury indicted Robert Seger, then 39 years old, for seven counts of sexual exploitation of minors: two counts of possession of child pornography, one count of receipt of child pornography, one count of distribution of child pornography, and three counts of production of child pornography. *Indictment* (ECF No. 1). On March 11, 1999, Mr. Seger appeared before Judge Morton A. Brody and pleaded guilty to all charges. *Proceeding* (ECF No. 6).

The Presentence Investigation Report (PSR) reveals that on August 24, 1998, a 14-year-old girl reported to the Bangor Police Department that when she visited Mr. Seger's home, she had seen on Mr. Seger's computer nude and sexual pictures of boys she knew. PSR ¶ 3. She identified two boys, ages 14 and 12, by name. *Id.* She said she also saw pictures of a third boy, who was around 6 years old; however, Mr.

Seger denied having any pictures involving the 6-year-old. *Id.* She also informed the police that Mr. Seger had asked her to pose nude for him, but she had refused. *Id.*

Based on this information, the police interviewed the 14-year-old boy. *Id.* at ¶ 4. He confirmed that beginning in the summer of 1997, when he was 13 years old, and continuing through August 1998, he had a sexual relationship with Mr. Seger. *Id.* The boy said that Mr. Seger gave him cash, alcohol, and other inducements in exchange for sex; Mr. Seger denied giving the boy alcohol. *Id.* The boy told the police that in May 1998, Mr. Seger began taking photographs of their sexual activity and placing them on his computer. *Id.* He said that he had seen child pornography on Mr. Seger's computer, including young children having sex with their parents, and he had seen Mr. Seger send child pornography pictures over the internet, including pictures of a local 17-year-old boy. *Id.* He informed the police that he had witnessed Mr. Seger engage in oral sex with the boy's 12-year-old brother and had seen pictures of his brother on Mr. Seger's computer. *Id.*

The police also interviewed the 12-year-old. This boy admitted posing for Mr. Seger but denied engaging in any sexual acts with him. *Id.* at ¶ 5. He confirmed that he had seen pictures of his brother and two local boys on Mr. Seger's computer. *Id.*

A second 14-year-old boy, brother of the first two boys, told the police that Mr. Seger had offered to pay him to masturbate in his presence and that he had seen pictures of his brothers and two other local boys on Mr. Seger's computer. *Id.* at ¶ 6.

The police interviewed an 18-year-old man, who said that he had seen Mr. Seger send and receive images of child pornography on his computer. *Id.*

Based on these interviews, the police seized and examined Mr. Seger's computer. *Id.* at ¶ 7. They found images of child pornography, a disk that contained images of his sexual acts with boys in his bedroom, emails indicating that he had sent and requested images of child pornography to and from other internet users, and images of sado-masochistic conduct with minors. *Id.*

When the police interviewed Mr. Seger, he admitted that he had downloaded images of young boys and girls, that the disk contained sexual images of 14- and 12-year-old boys, and that the disk also contained sexual images of him with the 14-year-old. *Id.*

The PSR revealed that Mr. Seger had a prior conviction in 1987 for assault, received an 11-month sentence, all but 90 days suspended, and probation for one year. *Id.* at ¶ 50. The PSR says that this conviction involved Mr. Seger having sexual relations with a minor. *Id.* It also says that on March 24, 1999, Mr. Seger pleaded guilty in state of Maine Superior Court to eight counts of engaging in sexual acts with a minor. *Id.* at ¶ 53. That crime is related to the conduct underlying some of his federal crimes. *Id.* He was to receive an eighteen-year sentence, all but 10 years suspended and six years' probation and the PSR indicated that the state sentence would run concurrently with the federal sentence. *Id.*

B.  **The Punishment**

On June 3, 1999, Judge Brody sentenced Mr. Seger to 60 months' incarceration of Counts One and Two (the possession charges) and 120 months on the remaining charges, all to be served concurrently, a period of supervised release of 36 months on

3

each of Counts One through Seven to be served concurrently, and a special assessment of $700. *J.* (ECF No. 8).

### C. Civil Commitment Proceedings and Decision

Mr. Seger's term of incarceration was to end on March 20, 2008. *See Order Clarifying Supervised Release* at 1 (ECF No. 30) (*District Ct. Order*). However, on March 10, 2008, ten days before the conclusion of his sentence, the Government moved to civilly commit Mr. Seger as a "sexually dangerous person" under the Adam Walsh Child Protection and Safety Act, 18 U.S.C. § 4248(a). *District Ct. Order* at 2. On January 23, 2013, a federal district court judge in the Eastern District of North Carolina denied the Government's petition. *Gov't's Mem. in Resp. to Def.'s Req. for Early Termination of Supervised Release* Attach. 1-3 (*Tr. of Ct.'s Ruling I-III*) (ECF No. 40). He was released on February 6, 2013. *District Ct. Order* at 2.

In his oral order, the district judge reviewed the burden on the Government in order to civilly commit a person for being sexually dangerous. *Tr. of Ct.'s Ruling I* at 2:6-4:14; 6:9-20. He stated that the Government must prove three elements by clear and convincing evidence: (1) that Mr. Seger engaged in or attempted to engage in sexually violent conduct or child molestation; (2) that he suffers from a serious mental illness, abnormality or disorder; and (3) that as a result of a serious mental illness, abnormality or disorder, he would have serious difficulty in refraining from sexually violent conduct or child molestation were he to be released. *Id.* at 6:9-20 (citing 18 U.S.C. §§ 4247(a)(5)-(6), 4248). The judge found that Mr. Seger had engaged in or attempted to engage in sexually violent conduct or child molestation. *Id.* at 6:21-7:9.

4

Discussing the last two factors, the judge reviewed the testimony of four experts: (1) a forensic psychologist employed by the Bureau of Prisons (BOP), (2) a clinical psychologist retained by the Government, (3) a defense psychologist, and (4) a defense neuropsychologist. *Tr. of Ct. Ruling I, II* at 7:10-12:23. The judge concluded that Mr. Seger "does have a serious mental illness, abnormality or disorder, which is Paraphilia Not Otherwise Specified." *Tr. of Ct. Ruling II* at 13:6-9. The judge noted that one of the experts had defined this condition as having "recurrent intense sexually arousing fantasies, sexual urges, or behaviors involving (1) nonhuman objects, (2) the suffering or humiliation of one's partner, or (3) children or other non-consenting persons." *Id.* at 10:15-22. He did not, however, find that the Government had proved that Mr. Seger suffers from pedophilia. *Id.* at 13:13-16.

The judge turned to the last issue: whether the Government had proven by clear and convincing evidence that if released, Mr. Seger "would have serious difficulty in refraining from sexually violent conduct or child molestation as a result of his serious mental illness, abnormality or disorder." *Id.* at 13:20-25. The judge quoted the Supreme Court in *Kansas v. Crane*, 534 U.S. 407, 413 (2002) as holding that "there must be proof of serious difficulty in controlling behavior" in order to civilly commit someone. *Id.* at 14:16-18. He went on to say that the Supreme Court has explained that the standard does not have any kind of "narrow or technical meaning" nor is it "demonstrable with mathematical precision." *Id.* at 14:21-23 (quoting *Crane*, 534 U.S. at 413).

5

The district judge observed that the Government's experts had performed "an actuarial analysis of the status risk factors that are historical and based upon characteristics of the sex offender's criminal history and analysis of relevant dynamic risk factors." *Tr. of Ct. Ruling III* at 16:2-6. These experts concluded respectively that Mr. Seger is at "moderate high risk" and "high risk" for sexual re-offense. *Id.* at 16:6-8. The judge recited evidence that while imprisoned, Mr. Seger ordered books that the BOP confiscated as containing child pornography; however, based on the evidence before the Court, the district judge did not find that the books actually contained child pornography. *Id.* at 18:15-20:10.

Mr. Seger testified and the judge found him to be "very credible." *Id.* at 20:11-12. The district judge said that he believed that Mr. Seger "appreciates the wrongfulness of his actions, and appreciates the likely consequences of engaging in or attempting to engage in child molestation or sexually violent behavior." *Id.* at 20:18-21. Specifically, the judge said, Mr. Seger "understands that if he were to engage in child molestation or sexually violent conduct or child pornographic conduct, that he would be caught and would likely receive a sentence of life imprisonment." *Id.* at 20:21-25.

In evaluating the expert testimony of the Government witnesses, the district judge found their opinions on the third prong of the civil commitment test not to be "convincing." *Id.* at 21:11-12. Instead, he found that Mr. Seger "has volitional control." *Id.* at 21:12-13. Indeed, the judge found that the defense experts' "analysis regarding the sexual dangerous prong [was] more thorough, better reasoned, and

6

more consistent with the evidence . . . ." *Id.* at 21:13-16. Accordingly, the Court concluded that the Government had "not met its burden of proof as a result of Seger's mental illness, abnormality, or disorder, that Seger would have serious difficulty in refraining from sexually violent conduct or child molestation." *Id.* at 21:17-20.

### D. Robert Seger's Motion to Clarify Terms of Supervised Release

On February 7, 2013, Mr. Seger moved pro se to clarify the terms of his supervised release. *Renewed Mot. to Clarify Terms of Supervised Release* (ECF No. 19). Mr. Seger spent nearly five years of additional time in the custody of the Bureau of Prisons after his scheduled release date from the criminal sentence. *District Ct. Order* at 3. In the motion, Mr. Seger raised the difficult legal question as to when his supervised release commenced: on March 20, 2008, the day he was released from his criminal sentence, or February 6, 2013, the day he was released from his civil commitment. *Id.* at 4. If his supervised release commenced on March 20, 2008, it would have concluded 36 months later on March 20, 2011 and he would not be subject to supervised release as a matter of law. *Id.* If his supervised release commenced on February 6, 2013, it would not be over until February 5, 2016. *Id.* Acknowledging that this is "not an easy issue", this Court concluded that Mr. Seger's supervised release commenced on February 6, 2013 but noted that he had presented "intricate problems of statutory construction" and had raised "serious policy considerations that make it proper for resolution by the Court of Appeals for the First Circuit, not this Court." *Id.* at 18. Mr. Seger duly appealed. *Notice of Appeal* (ECF No. 31).

On October 8, 2014, the First Circuit Court of Appeals issued an order, remanding this case to this Court and directing it "to expedite the handling of the appellant's anticipated motion for early termination pursuant 18 U.S.C. 3583(e)(1) and to act on the motion with all deliberate speed."[1] *Order of Ct.* at 1 (ECF No. 36). The First Circuit retained appellate jurisdiction and ordered the parties to file "a joint status report within thirty days of October 8, 2014 or at such sooner time as the district court has acted on the anticipated motion." *Id.* On October 9, 2014, this Court issued an order requiring the parties to expedite this matter in a manner consistent with the order of the appellate court. *Order on Expedited Handling* (ECF No. 37).

## II. REQUEST FOR EARLY TERMINATION

### A. Robert Seger's Request

On October 9, 2014, Mr. Seger filed a request for early termination. *Def.'s Req. for Early Termination of Supervised Release* (ECF No. 38). In the motion, Mr. Seger noted the following: (1) federal law authorizes an early termination; (2) the Judicial Conference Committee on Criminal Law has endorsed early terminations; (3) the District of Maine's Probation Office has among the best early release success rates in the Country; (4) as of October 2014, the Defendant has served 20 months of his 36 months of supervision; (5) he served 5 years of confinement following completion of his original term of incarceration while a hearing process was pending pursuant to

---

[1] The First Circuit "with[held] for the time being" the decision of when Mr. Seger's supervised release commenced. *Id.* at 3. As things stand now, his supervised release is set to expire on February 6, 2016. *See District Ct. Order* at 1.

8

18 U.S.C. § 4248; (6) the hearing process found in favor of Mr. Seger; (7) neither Assistant United States Attorney (AUSA) Gail Malone nor AUSA Margaret McGaughey objected to the early termination; and (8) the First Circuit has strongly suggested that an early termination would be appropriate. *Id.* at 1-4.

B.  **The Government's Acquiescence**

On October 10, 2014, this Court issued a further order, requesting additional information. *Further Order on Expedited Hr'g* (ECF No. 39). On October 10, 2014, the Government filed its position, attaching a copy of the transcript of the district court's decision denying the petition for civil commitment. *Gov't's Mem. in Resp. to Def.'s Req. for Early Termination of Supervised Release* (ECF No. 40) (*Gov't's Mem.*); *Tr. of Ct.'s Ruling I-III*. In its response, the Government reiterated some of the district judge's findings in the civil commitment hearing. *Gov't's Mem.* at 1-2. It noted that Mr. Seger has been compliant with the terms and conditions of his supervised release in Maine, including attending sex offender treatment and passing a polygraph. *Id.* at 2. It observed that if Mr. Seger's supervised release is terminated early, he will remain on state probation until December 27, 2017 and the conditions of his state probation match the conditions of his federal supervised release. *Id.* at 2-3. Furthermore, the Government pointed out that if Mr. Seger violates the conditions of his state probation, he will be subject to the unsuspended portion of his state prison term. *Id.* at 4. In sum, the Government represented that even if Mr. Seger's federal supervised release were terminated early, he "would be supervised and treated for more than three more years, and have a powerful incentive not to reoffend, assuaging

9

any concerns of ongoing risk to public safety." *Id.* The Government said that it "does not object to Defendant's motion for such early termination." *Id.*

### C. Robert Seger's Supplement

On October 15, 2014, Mr. Seger filed a supplemental memorandum, attaching the conditions of Mr. Seger's state probation. *Def.'s Supplemental Mem. in Support of Req. for Early Termination of Supervised Release* (ECF No. 41) (*Def.'s Supplemental*). Mr. Seger said that he has been working for about a year and a half and about seven months ago, he began work as a wood stacker at a lumber mill. *Id.* at 1-2. Three months ago, he was hired as a full-time employee at the mill. *Id.* at 2. He stressed that after work, he typically joins his 77-year-old mother and 38-year-old developmentally disabled sister for dinner, returning around 8:00 p.m. each night to his apartment for the night. *Id.* When he is not working, he says, he spends most of his time with his mother and sister. *Id.* Mr. Seger's state probation officer has represented that Mr. Seger has been fully compliant with all conditions of his state probation. *Id.* at 3. His treatment provider confirmed that he has shown "positive treatment signs." *Id.* at 4.

### D. The Position of the Probation Office

Finally, the Probation Office (PO) filed its position regarding early termination. *Interoffice Mem. from Mitchell E. Oswald, U.S. Probation Officer to Hon. John A. Woodcock, Jr.* (Oct 16, 2014). The PO recognized Mr. Seger's "positive effort, to date, while on supervised release;" however, the PO noted that "this compliance would not normally result in a request or recommendation for early

10

termination by the [PO]." *Id*. In fact, the PO observes that the PO is "precluded from recommending early termination for any sex offender pursuant to the Early Termination Guidelines adopted by the Judicial Conference in the Guide to Judiciary Policy, Vol. 8, Part E, Sec. 380.10." *Id*. Still, the PO described Mr. Seger's case as "unique" because he will be subject to ongoing state probation and it affirmed that it does not disagree with any of the representations made by the Government or the defense in their filings. *Id*. Because The Guide to Judiciary Policy precludes the PO from recommending early termination for sex offenders, the PO would only say that it "does not oppose the position of the defendant and the government." *Id*.

## III. LEGAL STANDARD

Under 18 U.S.C. § 3583(e)(1), a court is authorized to terminate a period of supervised release "if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice."[2] The statute suggests that a court should consider the factors set forth in § 3553, which include among other things the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to protect the public from future crimes of the defendant. 18 U.S.C. § 3553(a)(1), (a)(2)(C).

## IV. DISCUSSION

### A. Misgivings

The Court has substantial misgivings about the agreed-upon motion for early termination.

---

[2] The statute provides that a federal court may terminate supervised release at any time after the expiration of one year of supervised release. 18 U.S.C. § 3583(e). Mr. Seger meets that condition.

11

First, the nature of Mr. Seger's crimes continues to be troubling. According to the PSR, when he was 38 years old, he was involved not merely in possessing and distributing child pornography but also in producing it. The PSR confirms that Mr. Seger was taking sexually explicit photographs of 14- and 12-year-old boys, placing them on his computer and distributing them in exchange for similar images.

Second, some of the pornographic images Mr. Seger produced were images of himself engaged in sexually explicit conduct with these boys.

Third, Mr. Seger's federal child exploitation convictions followed a state conviction for assault that the PSR states involved a sexual assault of a minor when Mr. Seger was 27 years old for which he was treated gently by the state system and ended up reoffending.

Thus, Mr. Seger's convictions, including his federal convictions, reflect not merely viewing child pornography but multiple incidents of hands-on sexual contact with minors.

Fourth, the statutory penalties for the production of child pornography have changed since 1998 and the current statutory penalty for a violation of 18 U.S.C. § 2251(a) is not less than 15 years' incarceration, 18 U.S.C. § 2251(e), and not less than 5 years' supervised release. 18 U.S.C. § 3583(k). Although these penalties are not applicable to Mr. Seger, his early release from a three-year term of supervised release runs contrary to current statutory policy.

Fifth, Mr. Seger's reliance on the Judicial Conference policy in favor of early termination is misplaced. As the PO pointed out, the Judicial Conference provides:

> At subsequent assessments, there is a presumption in favor of recommending early termination for . . . supervised releasees:
>
> (1) Who have been under supervision for at least 18 months and
> (a) Are not . . . sex offenders . . . .

JUDICIAL CONFERENCE, GUIDE TO JUDICIARY POLICY, Vol. 8, Part E, § 380.10(e)(1)(A). Contrary to Mr. Seger's representation, the Judicial Conference has not endorsed early termination for supervisees who are sex offenders.

Sixth, Mr. Seger's objects of sexual interest are boys around 12 to 14 years old. Although there is no indication that Mr. Seger is attracted to extremely young children wholly unable to protect themselves, boys around the ages of 12 to 14 may be vulnerable to adult sexual approaches, especially when accompanied by inducements like gifts or alcohol, and they often do not realize the potential long-term impact of what they are doing.

Seventh, there is no evidence in this record about the victims of Mr. Seger's crime. Where they are and what position they would take on the early termination of his supervised release is not addressed in any of the parties' filings.

Eighth, Mr. Seger's compliance with the terms and conditions of his supervised release, though laudable, is generally not grounds for early termination. *See United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998) ("[the supervisee] has complied with the terms of his supervised release, but that ultimately is what is expected of him").

Ninth, the Court has no quarrel with the district judge's well-expressed and careful decision to deny the Government's motion for civil commitment. But the two

procedures—civil commitment and early release from supervised release—are markedly different. The civil commitment process at issue here "[b]uild[s] on an existing statutory scheme for civil commitment of mentally ill persons in federal custody," *United States v. Shields*, 649 F.3d 78 (1st Cir. 2011), and would place a person in federal custody in part because of a crime the person could commit in the future. *See United States v. Carta*, 592 F.3d 34, 42 (1st Cir. 2010) (noting that one of the three elements for a civil commitment under this statute is that the person has "a resulting serious difficulty in refraining from sexually violent conduct or child molestation if released") (internal punctuation omitted).

It is one thing to civilly commit a person because of a crime he might commit in the future; it is far different to terminate supervised release for a crime he did commit in the past. In the civil commitment process, the Government bears the burden of proving three elements by clear and convincing evidence. *United States v. Volungus*, 730 F.3d 40, 46 (1st Cir. 2013). By contrast, the Defendant bears the burden of proving his entitlement to termination and the issue is left to the discretion of the district court. *See* 18 U.S.C. § 3583(e).

Tenth, the Court has compared the terms and conditions of Mr. Seger's state probation and federal supervised release. Both the Government and Mr. Seger make the point that the terms and conditions of probation are virtually identical to the terms and conditions of supervised release. *Gov't's Mem.* at 3-4. In fact, Mr. Seger says, there are aspects of his state probation that are more stringent than his federal supervised release. *Def.'s Supplemental* at 3. The Court agrees that some of the state

probation conditions are more stringent, such as no unsupervised contact with minors under the age of 16, than the federal conditions. *Def.'s Supplemental* Attach. 1 at 1 (*Conditions of Probation*). But it is noteworthy that the federal conditions require internet monitoring, which the state of Maine conditions do not seem to do.

Eleventh, neither the Government nor Mr. Seger has suggested why the Court should terminate Mr. Seger's supervised release over a year before the natural expiration of his three year term. If the terms and conditions of his state probation are in fact similar to the terms and conditions of his federal supervised release, the Court is perplexed as to why he is so anxious to terminate his supervised release early.

### B. Advantages of Early Termination

The main reasons to terminate Mr. Seger's supervised release appear to be that he has done extremely well since released from incarceration and that he will still be subject to state probation. His stable employment, a close relationship with his mother and sister, continued participation in treatment, an absence of violation, the lack of objection on the part of the PO, and the inherent cost of duplicating supervision by both the state of Maine and the federal PO, all favor early termination.

Furthermore, Mr. Seger spent nearly five years of additional time in the custody of the BOP after his scheduled release date pending the resolution of *United States v. Comstock*, 507 F. Supp. 2d 522 (E.D.N.C. 2007), *aff'd*, 551 F.3d 274 (4th Cir. 2009), *rev'd*, 560 U.S. 126 (2010), *on remand*, 627 F.3d 513 (4th Cir. 2010), *cert. denied*, 131 S. Ct. 3026 (2011) (mem.), and pending the resolution of the pending civil

15

commitment proceedings. *See District Ct. Order* at 2. Mr. Seger was 39 when he was sentenced; he is now 54. He has spent most of the last 15 years of his life in federal custody, either incarcerated because of his federal crimes or waiting for release because of the civil commitment proceedings. Mr. Seger is much older and presumably wiser than he was in 1998 and he has every incentive not to commit another sexual offense against a minor. He would not only face the likelihood of an extended term of incarceration—either in state or federal prison, and, faced with new criminal conduct and a new victim, the Government could well decide to reinitiate a civil commitment proceeding, which might produce a different result, a likelihood Mr. Seger must be aware of and should deter inappropriate conduct.

In addition, it would be highly unusual for this Court to deny a motion for early termination where the defendant has made the motion, the Government supports it, and the PO does not object. Moreover, in Mr. Seger's case, the Court is at an unusual disadvantage. Unlike a defendant the Court has sentenced, this Court has never met Mr. Seger. AUSA Malone, who authored the Government's position in favor of the pending request, prosecuted Mr. Seger in 1998 and likely remembers him. Federal Defender Beneman has no doubt met his client. The PO has certainly supervised Mr. Seger over the last twenty months and has assessed his potential for reoffending. In the end, in exercising its judgment, the Court must rely in large part on the judgment of these parties.

Still, the Court remains unclear why the Government so dramatically altered its position on Mr. Seger. Only last year the Government was arguing to a district

16

judge that Mr. Seger was too sexually dangerous to be released into society at all; now the Government is saying that he poses such a remote risk of reoffending that the Court should terminate his supervised release. The Government assures the Court that it should be assuaged about "any concerns of ongoing risk to the public" and that he "meets the qualifications for early termination of supervised release under 18 U.S.C. § 3583(e)(1)," *Gov't's Mem.* at 3, which incorporates the need "to protect the public from future crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). The Court assumes that the Government's sudden and unusual change of heart about Mr. Seger is unrelated to the merits of the pending appeal, as that would not be a proper consideration under either 18 U.S.C. § 3583(e)(1) or § 3553(a) and the Government did not mention the appeal as a factor in its memorandum. *Id.* at 1-3. But the Government has not well explained its change of position on Mr. Seger and his potential for reoffending.

Finally, the Court acknowledges that supervised release "is a punishment in addition to incarceration, served after completion of a prison term." *United States v. Martin*, 363 F.3d 25, 35 n.17 (1st Cir. 2004). Even though supervised release is punishment, it "is intended to facilitate 'the integration of the violator into the community, while providing the supervision designed to limit further criminal conduct.'" *United States v. Joseph*, 109 F.3d 34, 38-39 (1st Cir. 1997) (quoting United States Sentencing Guidelines, Ch. 7, Pt. A, comment n.4). Yet, the Court agrees that for Mr. Seger the prospect of having to respond to both state and federal probation officers and to comply with both state and federal terms and conditions is "a

punishment", *Martin*, 363 F.3d at 35, n.17, which may be redundant, now over fifteen years since his offenses.

## V.  CONCLUSION

The Court is torn.  Its major concern continues to be the protection of the public, particularly minor males, from future crimes of the Defendant, and the Court wonders whether early termination of supervised release is justified by the incremental inconvenience to Mr. Seger.  Furthermore, the parties have done little to reassure the Court that this ongoing concern is not a legitimate worry despite their joint recommendation in favor of early termination.  It is understandable that Mr. Seger would seek early termination: why have two probation officers when one will do.  But here the Government itself is supporting Mr. Seger's motion and the PO has not objected, the Court will grant it, despite grave reservations.

The Court GRANTS Robert J. Seger's unopposed Request for Early Termination of Supervised Release (ECF No. 38).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 27th day of October, 2014